IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CR No.: 3:17-768-JFA |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| JEFFREY JOE | ) | |
| _____ | ) | |

This matter is before the court on the defendant's *pro se* motion for a reduction in his sentence pursuant to the First Step Act of 2018[1] and 18 U.S.C. § 3582(c)(1)(A) (ECF No. 112). Seeking compassionate release, the defendant contends that his medical conditions, along with the threat of the ongoing COVID-19 pandemic, constitute an extraordinary and compelling reason for consideration of his immediate release. As a fallback position, he contends that this court should order a reduction in his sentence.

The government has responded in opposition, arguing that the defendant has not shown an extraordinary and compelling reason for release. Additionally, the government asserts that the statutory sentencing factors under 18 U.S.C. § 3553(a) do not weigh in favor of the defendant's release. The defendant replied to the government's response.

The court has carefully considered the record before it and conducted an individualized analysis of the facts and issues raised by the parties. For the reasons which follow, the defendant's motion is respectfully denied.

---

[1] Pub. L. 115-015 (S. 756), 132 Stat. 015 (Dec. 21, 2018).

1

STANDARD OF REVIEW

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582©; *See United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson*, 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is when the modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B); *See Jackson*, 952 F.3d at 495.

Commonly termed the "compassionate release" provision, § 3582(c)(1)(A)(I) provides a statutory vehicle to modify a defendant's sentence. It was originally adopted as part of the Sentencing Reform Act of 1984.

On December 21, 2018, the First Step Act was signed into law. Broadly, the Act's goals are to reform federal prisons and sentencing laws to reduce recidivism, decrease the federal inmate population, and maintain public safety. The First Step Act also expanded the existing compassionate release provisions of federal law by allowing an inmate to move for compassionate release himself, rather than allowing only the Director of the Bureau of Prisons (BOP) to do so. The relevant portion of the First Step Act, codified at 18 U.S.C. § 3582(c)(1)(A), as amended by § 603(b) of the First Step Act, provides:

> [T]he court, . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever

> is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) [of Title 18] to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

By its terms, § 3582(c)(1)(A) permits the court to reduce the defendant's term of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if the court first finds that (I) extraordinary and compelling reasons warrant such a reduction; and (ii) such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. In addition, a district court may not grant a sentence reduction under § 3582(c)(1)(A) without considering the § 3553 factors to the extent they are applicable. *United States v. Kibble*, 992 F.3d 326, 332 (4th Cir. 2021).

In *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020), the Fourth Circuit agreed with the Second Circuit in *United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020) and found that there is, as of now, no "applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A)." As a result, district courts are "empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise." *McCoy*, 981 F.3d at 284 (citing *Brooker*, 976 F.3d at 230); *see also, Kibble*, 992 F.3d at 331.

A defendant's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t). Also, the defendant bears the burden

3

to establish that he or she is eligible for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

When deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court generally proceeds in three steps. *See United States v. High*, 997 F.3d 181, 185–86 (4th Cir. 2021). First, the court determines whether "extraordinary and compelling reasons" support a sentence reduction. Next, the court considers whether a sentence reduction is consistent with applicable policy statements issued by the Sentencing Commission. As noted previously in this order and as set out in *McCoy*, because there is no applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A), district courts are empowered to consider any extraordinary and compelling reason for release that a defendant might raise. Finally, if the court finds that extraordinary and compelling reasons warrant relief, the court must consider the § 3553(a) factors in deciding whether to exercise its discretion to reduce the defendant's term of imprisonment.

Even if the defendant meets the eligibility criteria for compassionate release, this court retains discretion as to whether to grant relief. *See* 18 U.S.C. § 3582(c)(1)(A) (providing the court *may* reduce the term of imprisonment) (emphasis added).

*Exhaustion of Administrative Remedies*

Before a court may consider a defendant's motion for compassionate release, the defendant must have completed the initial step of requesting that the BOP bring a motion on

their behalf. The defendant may file a motion with the court after (1) fully exhausting all administrative rights to appeal; or (2) after the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A); *see United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021).

The government concedes that the defendant appears to have exhausted his administrative remedies. Thus, the court will proceed to review the matter on the merits.

## DISCUSSION

The mere existence of the COVID-19 pandemic—which poses a threat to every non-immune individual in the world—cannot independently provide a basis for a sentence reduction or justify compassionate release. However, COVID-19 is certainly relevant to the court's analysis of a § 3582(c)(1)(A) motion for compassionate release. If a defendant has a chronic medical condition that has been identified by the Centers for Disease Control (CDC) as elevating the inmate's risk of becoming seriously ill from COVID-19, it is possible that such medical condition could satisfy the extraordinary and compelling reasons standard. As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

Rather, the threshold questions are whether the defendant has a particularized risk of contracting COVID-19 in prison and whether his or her medical conditions render them particularly susceptible to severe illness or death should he or she contract the virus.

*See United States v. Youngblood*, 858 Fed. Appx. 96, 98 (4th Cir. 2021) (citing *United States v. High*, 997 F.3d 181, 185 (4th Cir. 2021)).

### I. *The Defendant's Medical Conditions*

In his motion (ECF No. 112), the defendant contends that he suffers from hypertension, a mildly enlarged heart, and obesity. The government has responded and suggests that the defendant's medical conditions are not as severe as he suggests. Additionally, the government urges the court to determine that even if the defendant were to show an extraordinary and compelling reason for his release based upon medical conditions, the court should nevertheless deny the motion.

The defendant's Presentence Report (PSR) (ECF No. 79), prepared in 2019, states that "defendant reported being in overall good physical health. He denied having any significant illnesses or injuries in his past." The PSR does indicate, however, that the defendant has been diagnosed previously with high blood pressure which is controlled with prescription medication. The 2019 PSR also indicates that the defendant stand 5'7" tall and weighs 165 pounds.

In its opposition memorandum, the government points out that the defendant has not provided sufficient documentation for each of his asserted medical conditions. The government also contends that the BOP medical records do not substantiate any of the defendant's medical claims.

In contravention to the government's position in this case, the defendant's BOP medical records do document hypertension which is said to be controlled with medication. This is consistent with the defendant's 2019 PSR which, as indicated above, suggests that the defendant had been diagnosed with high blood pressure which is controlled with medication.

As to the defendant's obesity, the government contends that the defendant's medical records do not support a BMI of 30 as contended by the defendant. The government contends that the BMI indicated on the defendant's medical records is 25.

Regarding a mildly enlarged heart, the government concedes that at least one report, dated December 3, 2019, refers to the defendant's enlarged heart, but it indicates that there are no abnormalities stemming from this issue.

In reply, the defendant contends that his BMI is "between 25–30. He says that he informed the medical provider that his weight had dropped about 17 pounds from a 197 pound weight when the defendant last weighed himself as early as January 2021." He has been vaccinated for COVID-19.

On this record, the court concludes that the defendant has made a weak showing that his medical conditions, coupled with the ongoing COVID-19 pandemic, necessitate consideration of his immediate release. Even if the court were to make such a determination, however, the court's inquiry would then turn to an examination of the § 3553(a) sentencing factors, coupled with the defendant's post-sentencing conduct while incarcerated.

Under Fourth Circuit guidance, this court will now make an individualized assessment of the defendant's case, with specific attention to the 18 U.S.C. § 3553(a) factors, and also with particular review of the defendant's post-sentencing conduct while incarcerated.

The court will address the § 3553(a) factors in turn:

1.  *Nature and Circumstances of the Offense*.   The defendant pleaded guilty to possession with intent to distribute a quantity of heroin, a Schedule I controlled substance, and cocaine base and cocaine, both of which are Schedule II controlled substances.  The investigations revealed that the narcotics distributed by the defendant contained potent fentanyl analogs.

In September 2016, officials with the Kershaw County Sheriff's Office located quantities of crack cocaine, cocaine, heroin, xanax pills in defendant's possession during a traffic stop.  Thereafter, law enforcement utilized a confidential informant to purchase quantities of heroin and substances containing fentanyl analogs from the defendant during three controlled purchases in Camden, South Carolina.  Search warrants for two motel rooms in Camden, which were under defendant's control, yielded additional quantities of controlled substances and a firearm.  Based upon the information obtained by law enforcement, the defendant was held accountable for 26.156 kilograms of marijuana equivalent.

The defendant was the sole defendant in a 7-count indictment filed in the District of South Carolina on August 16, 2017.  The defendant was charged with various drug and weapon offenses:

Count 1:     possession with intent to distribute a quantity of heroin, a quantity of cocaine base (commonly known as "crack" cocaine), and a quantity of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(c);

Count 2:     possession with intent to distribute and distribution of a quantity of heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(c);

Count 3:     possession with intent to distribute and distribution of a mixture containing quantities of heroin, furanyl fentanyl, and fluoroisobutyrylfentanyl, a quantity of fentanyl, a quantity of carfentanil, and a quantity of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(c);

Count 4:     possession with intent to distribute and distribution of a mixture containing quantities of heroin and fluoroisobutyrylfentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(c);

Count 5:     felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 924(e);

Count 6:     possession with intent to distribute a quantity of heroin, a quantity of cocaine base (commonly known as "crack" cocaine), a quantity of methamphetamine, and a mixture containing quantities of both methamphetamine and cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(c); and

Count 7:     use and carry of a firearm during and in relation to and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(e)(1)(A)(I).

The government filed an Information (ECF No. 20) pursuant to 21 U.S.C. § 851 notifying the defendant that he was subject to enhanced penalties of the drug charges in light of his five prior felony drug convictions in state court.[2] The defendant was on state probation

---

[2] Those convictions were as follows: (1) distribution of crack cocaine (offense date 03/29/1995) in Lee County where he was sentenced to a Youthful Offender Act sentence not to exceed 6 years suspended upon 5 years of probation; (2) possession with intent to distribute crack cocaine, 2nd offense (offense date 08/10/2001) in Kershaw County where he was sentenced to 10

9

at the time of the instant federal offense.

The defendant pleaded guilty, pursuant to a written plea agreement (ECF No. 70), to Count 1 above. The plea agreement included provisions wherein in exchange for the plea, the government would recommend no further state prosecution for related charges stemming from the same incidents and would remove the previously filed § 851 Information, but the parties acknowledged that removal of the § 851 Information would have no bearing on the government's position that those prior convictions would serve as proper predicates for career offender classification.

The PSR calculated the defendant's total offense level at 31 and his criminal history category was VI. This yielded a Guidelines sentencing range of 188 to 235 months incarceration. The government withdrew the § 851 enhancements that had been filed. The defendant's sentencing hearing stretched over several days and ultimately, the court sentenced the defendant to a Guideline sentence of 210 months.

The defendant filed a direct appeal of his conviction and sentence. The Fourth Circuit Court of Appeals affirmed the conviction with a mandate issued on May 14, 2021 (ECF No. 136) (No. 19-4760).[3]

---

years imprisonment; (3) trafficking crack cocaine, 2nd offense (offense date 11/07/2002) in Kershaw County where he was sentenced to 10 years of imprisonment; (4) distribution of crack cocaine, 2nd offense (offense date 11/01/2002) in Lee County where he was sentenced to 10 years imprisonment; and (5) possession with intent to distribute marijuana (offense date 09/11/2011) in Lee County where he was sentenced to 5 years imprisonment suspended upon 2 years of probation.

[3] The defendant filed his motion for compassionate release while his direct appeal was pending. This court dismissed the motion without prejudice. After a later ruling by the Fourth Circuit in *United States v. Bunch*, 828 Fed. Appx. 185 (4th Cir. 2020) (unpublished), this court reinstated the motion and deferred

The defendant has served approximately 25 percent of his 210-month sentence and is currently scheduled to be released in December 2031. He is presently housed at Williamsburg Federal Correctional Institution.

2.  *History and Characteristics of the Defendant.*  With regard to the history and characteristics of the defendant, the defendant's criminal history, which began at the age of 18, consists of the following prior felony convictions: two counts of Failure to Stop for Blue Light (1995 and 2014); two counts of Distribution of Crack Cocaine (both in 1996); two counts of Possession with Intent to Distribute Crack Cocaine, 2nd Offense (both in 2003); Trafficking Crack Cocaine, 2nd Offense (2003); Possession with Intent to Distribute Marijuana (2013); Possession of Marijuana, 2nd Offense (2014); and Possession of Cocaine Base (2014). In addition to his felony convictions, the defendant has numerous prior misdemeanor convictions for: two counts of Driving Under the Influence (1995 and 1997); multiple counts of Possession of Marijuana (1995, 2001, 2012, and 2013); Assault and Battery (1995); multiple counts of Violation of Open Container Law (2001, 2011, 2013, and 2014); Breach of Peace (2001); Resisting Arrest (2014); two counts of Driving Under Suspension (1997 and 2014); and multiple traffic violations.

The defendant was on state probation at the time of the commission of the instant offense, which was his 6th drug offense involving distribution or possession with intent to distribute.  The defendant's sentencing occurred barely one year from the time of his last

---

ruling on it until the direct appeal was final.

state conviction. The defendant's criminal history shows a pattern of reoffending while on state supervision and having his probationary sentence revoked. As the government points out, the defendant's assertion that firearms were not a part of his offense is not correct. As shown in the PSR, during the search of one defendant's hotel rooms, a .25 caliber handgun was recovered. The defendant's Guideline calculations included a two-level enhancement for a dangerous weapon. However, due to the defendant's status as a career offender, that enhancement had no bearing on his ultimate Guidelines sentence.

The defendant is currently 45 years old, single and has 4 adult children. He has experimented with a variety of controlled substances for most of his life.

*Post Sentencing Conduct*

Commendably, the defendant has not incurred any disciplinary violations which serving his current sentence.

While incarcerated, the defendant has taken a variety of vocational and educational programs designed to make him a productive member of society upon his release. These courses include: anger hostility management, finance, mental health, leisure fitness, and anti-social personality.

The defendant notes in his motion that if released, he will live with his mother and father in Bishopville, South Carolina. He states that he will diligently seek out employment based on his acquired vocational trades or other legitimate means.

3. *Seriousness of the Crimes*. As evidence by the historical facts set out in the PSR involving the defendant's instant conviction, this court regards the defendant's crimes as very serious, fully supportive of a significant sentence.

4. *Whether the Sentence Promotes Respect for the Law and Just Punishment for the Offense*. The court finds a significant sentence is necessary to promote respect for the law and just punishment.

5. *Whether the Sentence Affords Adequate Deterrence to Criminal Conduct*. The court finds that a significant sentence is necessary to provide both general and specific deterrents.

6. *Whether the Sentence Protects the Public from Future Crimes of the Defendant.* The court finds that a significant sentence is necessary to protect the public from future crimes of the defendant. The court views this as an important factor to be addressed in considering the present motion. This is perhaps one of the most important factors counseling against the defendant's immediate release.

7. *Need to Avoid Unwarranted Disparity*. Compared with the culpability of similarly situated defendants, the defendant's imposed sentence was and is in line with statutory factors. In this case, the defendant was the sole individual charged in the indictment.

## II. *Additional Arguments Advanced by the Defendant*

In his second reply to the government's opposition memorandum (ECF No. 137), the defendant raises additional grounds. He contends that "the bulk" of his prior convictions

stemmed from a need to maintain his drug habit. He contends that his criminal history category is thus overstated. The court respectfully disagrees. The defendant has a lengthy criminal history and was on state probation at the time of the instant offense, which was his 6th drug offense involving the distribution of drugs or possession with intent to distribute. The court does not find that the defendant's criminal history was overstated. The criminal convictions on the defendant's record resulted in a criminal history score of 16. To this figure there were added 2 points because the instant offense was committed while the defendant was on state probation. The defendant's total criminal history category was thus 18, placing him on the top of the charts with a criminal history category of VI. This was determined without reference to the defendant's categorization as a career offender.

The defendant also suggests that if the court is not inclined to order his immediate release, a reduction of his sentence to 151 months is appropriate. The court respectfully disagrees. Considering the nature and circumstances of the offense of conviction, coupled with the defendant's extensive criminal history, no alteration of the defendant's sentence is appropriate.[4]

---

[4] To the extent the defendant seeks to have this court direct the BOP to place the defendant in home confinement, however, this court is without authority to do so. The discretion to release a prisoner to home confinement lies solely with the Attorney General. See 18 U.S.C. § 3624(c)(2); 34 U.S.C. § 60541(g). The legislation recently passed by Congress to address the COVID-19 pandemic does not alter this. See CARES Act, Pub. L. No. 116-136, 134 Stat 281, 516 (2020) ("During the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau [of Prisons], the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate.")

CONCLUSION

As noted earlier in this order, the court determines that the defendant has demonstrated an extraordinary and compelling reason for compassionate release relating to his medical conditions. Even so, the defendant's release at this time is not appropriate in light of this court's investigation of the record and individualized assessment of the § 3553(a) factors, including the defendant's post-sentencing conduct discussed herein. This court's review of these factors points to the strong conclusion that the defendant's release at this time is not appropriate.

For the foregoing reasons, the motion (ECF No. 112) is respectfully denied.

IT IS SO ORDERED.

July 7, 2022  
Columbia, South Carolina

Joseph F. Anderson, Jr.  
United States District Judge